[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16688
Non-Argument Calendar
_____

D.C. Docket Nos. 2:15-cv-00765-JES; 9:14-bkc-08659-FMD

In re: PASQUALE B. NARCISI, II,

Debtor.
_____

MARJORIE AAMODT, NORMAN AAMODT,

Plaintiffs - Appellants,

versus

PASQUALE B. NARCISI, II,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 26, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JORDAN, Circuit Judges.

PER CURIAM:

Marjorie and Norman Aamodt appeal the district court's order affirming the bankruptcy court's grant of summary judgment in favor of debtor Pasquale Narcisi, in which the bankruptcy court ruled that the debt Mr. Narcisi owed to the Aamodts was not excepted from Chapter 7 discharge for fraud committed while acting in a fiduciary capacity or larceny under 11 U.S.C. § 523(a)(4).  Following a review of the record and the arguments raised in the Aamodts' brief, we affirm.[1]

## I

Over thirty years ago, the parties entered into a consignment agreement for the sale of antiques which guaranteed the Aamodts $25,000.00 from the proceeds of the auction.  Because of certain irregularities in the way in which Mr. Narcisi conducted the auction, the Aamodts ended up with only $14,795.83, so they sued him in Pennsylvania state court for breach of contract.  The state court entered a damages judgment against Mr. Narcisi, concluding that he had breached the agreement by "(i) selling items on days other than the scheduled date of the auction without notice to the parties; (ii) commingling [the Aamodts'] property with other

---

[1] Also pending before this Court is the Aamodts' amended motion to supplement the record.  The Aamodts seek to add an order that the bankruptcy court entered after it awarded Mr. Narcisi summary judgment.  That subsequent order by the bankruptcy court, which relates to Mr. Narcisi's core bankruptcy proceedings and not to this adversary proceeding, has no bearing on this appeal.  We therefore deny the motion to supplement the record.

2

items for sale; and (iii) conducting the auction in 'a less than vigorous manner.'" Bankr. Ct. Mem. Op. and Order, D.E. 4-7, at 3 (Dec. 23, 2015).

Mr. Narcisi filed this Chapter 7 bankruptcy in 2014, and the Aamodts filed an adversary complaint to determine the dischargeability of the debt under 11 U.S.C. § 523(a)(4). They later moved for summary judgment, but the bankruptcy court denied their motion. Instead, it sua sponte entered summary judgment in Mr. Narcisi's favor. The district court affirmed, and this appeal followed.

## II

"As the second court of review of a bankruptcy court's judgment, this Court examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court." *In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004) (internal quotation marks omitted). We review the bankruptcy court's factual findings for clear error, and exercise plenary review over its legal conclusions. *See In re Fretz*, 244 F.3d 1323, 1326 (11th Cir. 2001). We review "a bankruptcy court's entry of summary judgment *de novo*." *In re Optical Techs., Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001).

## III

The Aamodts raise three arguments on appeal. First, they argue that the bankruptcy court was collaterally estopped by findings made in the previous

3

Pennsylvania state-court proceeding, and by a ruling in a different adversary proceeding in Mr. Narcisi's earlier Chapter 13 bankruptcy case.  Second, they contend that the bankruptcy court abused its discretion in denying them leave to amend their adversary complaint to allege embezzlement as an additional exception to discharge.  Third, they argue that the district court erred in sua sponte granting summary judgment in favor of Mr. Narcisi because there were material issues of fact and because they were not on notice of the possibility that summary judgment would be entered against them.

## A

"[C]ollateral estoppel principles . . . apply in discharge exception proceedings."  *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991).  "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case."  *In re St. Laurent*, 991 F.2d 672, 675–76 (11th Cir.), *as corrected on reh'g* (11th Cir. 1993) (citing *Allen v. McCurry,* 449 U.S. 90, 95 (1980)).  To determine the preclusive effect of a prior judgment by a state court, we apply the collateral estoppel law of that state.  *See In re St. Laurent*, 991 F.2d at 675–76.  Neither of the two orders the Aamodts rely upon are preclusive.

4

First, with respect to the dismissal order in Mr. Narcisi's earlier Chapter 13 bankruptcy proceeding, the Aamodts failed to assert the alleged preclusive effect of that order as a basis for summary judgment. *See* D.E. 4-7 at 5–12. *See also* D.E. 3-11. This argument is therefore forfeited because it was not properly raised before the bankruptcy court. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1301 (11th Cir. 2003). In any event, had the Aamodts properly raised the argument, they would still not prevail because, as the district court explained, the bankruptcy court in Mr. Narcisi's earlier Chapter 13 proceeding never decided whether the debt he owed to the Aamodts was dischargeable. Rather, the dismissal order in that case was based on Mr. Narcisi's failure to file an amended Chapter 13 plan.

Second, like the district court, we conclude that the Pennsylvania state-court order did not preclude the bankruptcy court from finding that Mr. Narcisi had not acted as a fiduciary to the Aamodts and that he had not committed fraud. In adjudicating the Aamodts' state-law claim, the Pennsylvania state court determined that the parties had entered into a consignment agreement, that Mr. Narcisi had breached it in various ways, and that the Aamodts were entitled to a damages award for their loss. The judgment stems from the state court's determination that Mr. Narcisi breached the express terms of a contract, not that he had acted as a fiduciary and violated his duty. The state court's judgment likewise does not mean

5

that Mr. Narcisi committed fraud, because that ordinarily requires a finding of intent.

In sum, the two orders relied upon by the Aamodts are not preclusive. They either did not actually decide the issue before the bankruptcy court, or the issues they did decide were not identical. *See In re Bush*, 62 F.3d 1319, 1322 (11th Cir. 1995) (collateral estoppel under federal law); *Rue v. K-Mart Corp.*, 552 Pa. 13, 17, 713 A.2d 82, 84 (1998) (collateral estoppel under Pennsylvania law).

**B**

We review the denial of a motion for leave to amend for abuse of discretion. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). A court need not grant leave "where amendment would be futile." *Id.* The bankruptcy court did not abuse its discretion in denying the Aamodts' motion for leave to amend their adversary complaint (as construed from their amended motion for summary judgment) to allege embezzlement as an additional exception to discharge under § 523(a)(4). The embezzlement claim was time-barred, so amendment would have been futile.

Federal Rule of Bankruptcy Procedure 4007(c) requires a complaint to determine the dischargeability of a debt to be filed no later than 60 days after the first date set for the creditors' meeting under 11 U.S.C. § 341(a). The Aamodts timely filed their adversary complaint within the 60-day period, but that complaint

6

did not assert embezzlement as an exception to discharge under § 523(a)(4). It was not until their amended motion for summary judgment, filed nearly six months after the deadline under Rule 4007(c), that the Aamodts asserted the embezzlement exception by alleging that Mr. Narcisi had retained a number of the consigned items instead of selling them.

The bankruptcy court construed the new argument as a motion for leave to file an amended complaint, and then denied leave on the ground that amendment would be futile because the new claim was time-barred. Underpinning this conclusion was the bankruptcy court's determination that the new embezzlement claim did not relate back to the original complaint because it relied on facts that had not been previously alleged by the Aamodts.

The Aamodts' initial two-page adversary complaint only alleged that Mr. Narcisi's debt was excepted from discharge because "[t]he debt was incurred . . . due to . . . fraud in acting in a fiduciary capacity." D.E. 3-5 at 1. They supported their complaint with affidavits alleging various deficiencies in Mr. Narcisi's auctioning of the consigned goods. *See id.* at 3–5. Neither the complaint nor the affidavits, however, mentioned embezzlement or accused Mr. Narcisi of retaining the consigned items. The embezzlement claim therefore did not relate back and was time-barred. And so, because amendment would have

7

been futile, we agree with the district court that the bankruptcy court did not abuse its discretion in denying leave to amend.

## C

Summary judgment is appropriate when the moving party shows that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law. *See Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). If the evidence supporting the nonmoving party is merely colorable or not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). As we explain, the bankruptcy court did not err in entering summary judgment on the Aamodts' claims that the debt was excepted because Mr. Narcisi had committed fraud while acting as their fiduciary and because he had committed larceny.

First, there is no evidence that the parties entered into a fiduciary relationship. The Aamodts contend that their contract imposed fiduciary obligations on Mr. Narcisi because it required a "segregated trust fund," Br. of Appellants at 11, but that is nowhere to be found in the one-page consignment agreement. *See* D.E. 4-7 at 2 (citing Bankr. Ct. D.E. 30 at 46). And a consignment agreement creating an agency relationship does not, by itself, establish a fiduciary relationship for purposes of § 523(a)(4). *See, e.g.*, *In re Blaszak*, 397 F.3d 386,

8

391 (6th Cir. 2005) ("[A]n agent-principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by § 523.").

The Aamodts also argue that Mr. Narcisi owed them a fiduciary duty under Pennsylvania law. *See* Br. of Appellants at 10. We have previously held that statutes that impose trust-like duties, such as those requiring an agent "to promptly account for and remit payments of funds" and forbidding "commingling the funds with [the agent's] operating or personal accounts," *Quaif v. Johnson*, 4 F.3d 950, 954 (11th Cir. 1993), may create a fiduciary relationship by operation of law. The Aamodts say that Pennsylvania law at the time prohibited auctioneers from commingling "moneys received from the sale of property," Br. of Appellants at 10, and therefore imposed a fiduciary duty on Mr. Narcisi.

Even if Pennsylvania law imposed certain fiduciary duties on Mr. Narcisi, there is no evidence that he violated the specific duty to "promptly deposit moneys, received from the sale of property, belonging to others in a separate custodial or trust fund account maintained by the licensee or registrant until the transaction involved is terminated." Auctioneer Licensing and Trading Assistant Registration Act, Act of Dec. 22, 1983, P.L. 327, No. 85 § 21. Neither the Aamodts' affidavits, nor the Pennsylvania state court's factual findings, establish that Mr. Narcisi commingled the proceeds from the sale of the Aamodts' antiques. Rather, Mr. Narcisi's alleged contractual breach was that, among other things, he

9

commingled the Aamodts' antiques with other items at the time of sale. *See* Tr. of Pennsylvania State Court Proceedings, D.E. 3-11, at 65 (finding that the auction was supposed to take place on a specified date, with the Aamodts' property to be the only items up for auction on that day, and that Mr. Narcisi breached the agreement by commingling the "assets for sale"). Accordingly, summary judgment was properly granted on the Aamodts' claim that Mr. Narcisi committed fraud while acting as their fiduciary because there is insufficient evidence demonstrating the existence of a fiduciary relationship.

Second, the Aamodts have presented no evidence that Mr. Narcisi committed larceny. As the bankruptcy court explained, larceny requires the unlawful taking of property. *See* D.E. 4-7 at 11–12. Here, the Aamodts willfully turned their property over to Mr. Narcisi under the terms of the consignment agreement. The bankruptcy court therefore correctly entered summary judgment on the Aamodts' claim that the debt was excepted under § 523(a)(4) because it was the product of larceny.[2]

Finally, the bankruptcy court did not abuse its discretion in sua sponte entering summary judgment against the Aamodts. "A court may sua sponte grant summary judgment so long as the losing party was on notice that it had to come

---

[2] The Aamodts failed to allege larceny in their initial adversary complaint, but the bankruptcy court considered their larceny claim after construing their amended motion for summary judgment as a motion for leave to amend the complaint. Unlike the embezzlement claim, the larceny claim, the bankruptcy court explained, was not time-barred because it related back to the original facts alleged.

10

forward with all of its evidence." *In re Fisher Island Investments, Inc.*, 778 F.3d 1172, 1195 (11th Cir. 2015) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

The Aamodts were sufficiently on notice that they had to come forward with all of their evidence. In fact, as part of a round of summary judgment that they themselves initiated, the Aamodts *had* already presented their arguments and evidence on the same issues covered by the bankruptcy court's sua sponte order. By the time the bankruptcy court capped off the round of summary judgment with its sua sponte order, the Aamodts had submitted a 16-page amended motion for summary judgment and over 50 pages of evidence in support. Mr. Narcisi responded to the motion, but submitted no additional evidence of his own.

In entering summary judgment sua sponte, the bankruptcy court accepted all of the Aamodts' factual allegations as true and considered the evidence they had submitted along with their amended motion for summary judgment. Because the bankruptcy court did not rely on extraneous facts and instead completely credited the Aamodts' factual allegations, and because the Aamodts had already briefed and submitted evidence on the same issues, there was no need to give them an opportunity to present additional facts to contest summary judgment.

11

## IV

For these reasons, we affirm the district court's order affirming the bankruptcy court's grant of summary judgment in favor of debtor Pasquale Narcisi.

**AFFIRMED.**